TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00250-CV






Texas Commission on Environmental Quality, Appellant


v.


The Honorable Greg Abbott, Attorney General of Texas; 

and the Honorable Eliot Shapleigh, Texas Senator, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. D-1-GN-08-001855, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING






O P I N I O N



 In this appeal, the Texas Commission on Environmental Quality seeks reversal of the
district court's judgment requiring the Commission to disclose certain confidential and privileged
documents to Texas Senator Eliot Shapleigh. The issue presented is whether separation of powers
limits the legislature's authority to obtain confidential and privileged communications between a
state agency and its lawyers pursuant to section 552.008 of the Texas Public Information Act. See
Tex. Gov't Code Ann. § 552.008 (West 2004). Because we conclude that section 552.008 requires
disclosure of the documents at issue to Senator Shapleigh, we affirm the judgment.


BACKGROUND


 The facts of this cause are largely undisputed. In 2008, Senator Eliot Shapleigh
intervened in an administrative proceeding before the Commission involving a request by
Asarco, Inc., to renew its air quality permit in order to reopen its copper smelting plant in El Paso,
Texas. Shortly after the Commission issued a final order granting the permit application, Senator
Shapleigh made two separate requests (1) for documents from the Commission under the Texas Public
Information Act. (2) See Tex. Gov't Code Ann. §§ 552.001-.353 (West 2004 & Supp. 2009). In both
requests, Senator Shapleigh requested documents pursuant to "the legislative purpose special right
of access in Section 552.008 . . . ."

 At the time of Senator Shapleigh's requests, section 552.008 provided:


 (a) This chapter does not grant authority to withhold information from individual
members, agencies, or committees of the legislature to use for legislative
purposes.


 (b) A governmental body on request by an individual member, agency, or
committee of the legislature shall provide public information, including
confidential information, to the requesting member, agency, or committee for
inspection or duplication in accordance with this chapter if the requesting
member, agency, or committee states that the public information is requested
under this chapter for legislative purposes. A governmental body, by
providing public information under this section that is confidential or
otherwise excepted from required disclosure under law, does not waive or
affect the confidentiality of the information for purposes of state or federal
law or waive the right to assert exceptions to required disclosure of the
information in the future. The governmental body may require the requesting
individual member of the legislature, the requesting legislative agency or
committee, or the members or employees of the requesting entity who will
view or handle information that is received under this section and that is
confidential under law to sign a confidentiality agreement that covers the
information and requires that:


 (1) the information not be disclosed outside the requesting entity, or
within the requesting entity for purposes other than the purpose for
which it was received; 


 (2) the information be labeled as confidential; 


 (3) the information be kept securely; or 


 (4) the number of copies made of the information or the notes taken from
the information that implicate the confidential nature of the
information be controlled, with all copies or notes that are not
destroyed or returned to the governmental body remaining
confidential and subject to the confidentiality agreement. 


 (c) This section does not affect:


 (1) the right of an individual member, agency, or committee of the
legislature to obtain information from a governmental body under
other law, including under the rules of either house of the legislature; 


 (2) the procedures under which the information is obtained under other
law; or 


 (3) the use that may be made of the information obtained under other
law. (3)


 The Commission made several documents available to Senator Shapleigh but declined
to disclose certain documents that it deemed privileged attorney-client communications and attorney
work product. Id. § 552.305 (West 2004). Included among the documents withheld by the
Commission were documents prepared by the Commission's Office of General Counsel to advise
the Commissioners regarding the Asarco application. Also included were documents prepared by
lawyers in the Environmental Law Division who advise the executive director of the Commission. 

 The Commission forwarded all of these documents to the Open Records Division of
the Office of the Attorney General and requested a ruling under section 552.301 of the public
information act. (4) See id. § 552.301 (West 2004). The Commission asserted that its documents were
excepted from disclosure under sections 552.101 (confidential under other law), 552.103
(information related to litigation), 552.107 (attorney-client privilege), and 552.111 (agency
memoranda and deliberative process privilege) of the act. See Tex. Gov't Code Ann. §§ 552.101,
.103, .107, .111 (West 2004). In conjunction with its claim under section 552.101, the Commission
also asserted that its documents were excepted from disclosure under Texas Rule of Evidence 503
and Texas Rule of Civil Procedure 192.5. See id. § 552.101; Tex. R. Evid. 503; Tex. R. Civ. P.
192.5. The Commission further claimed that disclosure of its documents to Senator Shapleigh would
"disturb the effective separation of powers [under article II, section 1, of the Texas Constitution]
because the legislative function would be in the position to interfere with the judicial and executive
functions." See Tex. Const. art. II, § 1.

 The attorney general issued an informal letter ruling, OR2008-06742, which
interpreted the public information act to require disclosure of all documents held by the
Commission's general counsel and Environmental Law Division to Senator Shapleigh. See Tex.
Att'y Gen. OR2008-06742 (May 16, 2008). The attorney general declined to address the
Commission's assertions that its documents were confidential under Texas Rule of Evidence 503
or Texas Rule of Civil Procedure 192.5 in conjunction with section 552.101 of the act because the
attorney general had previously "concluded that section 552.101 does not encompass discovery
privileges." See OR2008-06742 at 1 n.1 (citing Tex. Att'y Gen. ORD Nos. 676 at 1-2 (2002),
575 at 2 (1990)). Finding that the Commission "failed to sufficiently demonstrate that such
interference [wa]s present in the instant case," the attorney general rejected the Commission's claim
that release of the subject documents would raise separation of powers concerns. Id. at 3. The
attorney general concluded that the Commission's documents were subject to disclosure under
section 552.008 of the public information act and, therefore, declined to address the Commission's
remaining arguments. Id.

 The Commission sued the attorney general in district court, and Senator Shapleigh
intervened. See Tex. Gov't Code Ann. §§ 552.324(a), .325 (West 2004). Senator Shapleigh filed
a motion for summary judgment. See Tex. R. Civ. P. 166a(c). The Commission also sought
summary judgment, but the attorney general did not. The district court granted the senator's motion
and denied the motion of the Commission. This appeal followed.


ANALYSIS


 The Commission contends that the district court erred in concluding that
section 552.008 of the public information act requires the Commission to disclose the documents
at issue to Senator Shapleigh because the statute and Senator Shapleigh's requests violate the
separation of powers doctrine embodied in article II, section 1, of the Texas Constitution. Senator
Shapleigh and the attorney general respond that there was no error in the district court's judgment
because the Commission cannot show that the statute or Senator Shapleigh's requests amounted to
undue interference with a core function constitutionally committed to the Commission.


Standard of Review

 We review the district court's grant of summary judgment de novo. (5) Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary judgment
motion, the movant must show that there are no genuine issues of material fact and that he is entitled
to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

 Determining whether an exception applies under the public information act to support
withholding of public information is a question of law, which we review de novo. See City of
Garland v. Dallas Morning News, 22 S.W.3d 351, 357 (Tex. 2000); City of Fort Worth v. Cornyn,
86 S.W.3d 320, 323 (Tex. App.--Austin 2002, no pet.). We construe the act liberally in favor of
granting requests for information, while narrowly construing exceptions to disclosure. See Tex.
Gov't Code Ann. § 552.001(b) (West 2004); City of Garland, 22 S.W.3d at 365.

 We consider questions of statutory construction de novo as well. See City of San
Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003). When construing a statute, our primary
goal is to determine and give effect to the legislature's intent. Id. To determine legislative intent, we
look to the statute as a whole, as opposed to isolated provisions. State v. Gonzalez, 82 S.W.3d 322,
327 (Tex. 2002). We begin with the plain language of the statute at issue and apply its common
meaning. City of San Antonio, 111 S.W.3d at 25. Where the statutory text is unambiguous, we
adopt a construction supported by the statute's plain language unless that construction would lead
to an absurd result. Fleming Foods of Tex., Inc. v. Rylander, 6 S.W.3d 278, 284 (Tex. 1999).

 We construe Texas constitutional provisions in the same manner as we construe
statutes. Harris County Hosp. Dist. v. Tomball Reg'l Hosp., 283 S.W.3d 838, 842 (Tex. 2009);
Doody v. Ameriquest Mortgage Co., 49 S.W.3d 342, 344 (Tex. 2001). The guiding rule is to discern
and give effect to the intent of the provision's drafters. Harris County Hosp. Dist., 283 S.W.3d at
842; City of El Paso v. El Paso Cmty. Coll. Dist., 729 S.W.2d 296, 298 (Tex. 1986). We rely heavily
on the literal text of a constitutional provision to give effect to its plain language. Harris County
Hosp. Dist., 283 S.W.3d at 842; Doody, 49 S.W.3d at 344. If the plain language of a constitutional
provision is clear and unambiguous, resort to extrinsic aids and rules of construction is inappropriate,
and we give the language of the provision its common everyday meaning. City of Rockwall
v. Hughes, 246 S.W.3d 621, 625-26 (Tex. 2008); State v. Shumake, 199 S.W.3d 279, 284 (Tex.
2006). This rule provides an objective guidepost to discern the drafter's intent and ensures that
ordinary citizens may "rely on the plain language . . . to mean what it says." Fitzgerald v. Advanced
Spine Fixation Sys., Inc., 996 S.W.2d 864, 866 (Tex. 1999).


Legislative Access Under Section 552.008

 We address as an initial matter the Commission's proposed construction of section
552.008. As part of its argument, the Commission asserts that we may interpret section 552.008 in
a manner that avoids the constitutional question of separation of powers. Specifically, the
Commission contends that we may employ a heightened standard of interpretation to construe the
phrase "including confidential information" in subsection 552.008(b) to exclude the documents at
issue in this case--i.e., documents protected by the attorney-client and work-product privileges.

 As a general rule, we agree with the Commission that courts should construe statutes
in a manner that renders them constitutional and gives effect to the legislature's intent. See Quick
v. City of Austin, 7 S.W.3d 109, 115 (Tex. 1998); see also Sweeney v. Jefferson, 212 S.W.3d 556,
565 (Tex. App.--Austin 2006, no pet.) (courts should avoid deciding constitutional question when
possible). However, the Commission provides no authority for its heightened statutory construction
argument, and we have found none.

 The starting point for construing a statute is the language of the statute itself. In re
City of Georgetown, 53 S.W.3d 328, 331 (Tex. 2001). The plain language of subsection 552.008(b)
requires the Commission "on request by an individual member, agency, or committee of the
legislature [to] provide public information, including confidential information," if the information
is requested for legislative purposes. Tex. Gov't Code Ann. § 552.008(b). There is nothing
ambiguous about the phrase "confidential information." Id. In the context of the attorney-client
relationship, the state bar disciplinary rules define "confidential information" to encompass even
unprivileged client information. Tex. Disciplinary R. Prof. Conduct 1.05(a) (eff. Jan. 1, 1990),
reprinted in Texas Rules of Court: State 507 (West 2009) (State Bar Rules art. X, § 9). Applying
this definition, the Texas Supreme Court has held, "[V]irtually any information relating to a case
should be considered confidential." See Phoenix Founders v. Marshall, 887 S.W.2d 831, 834 (Tex.
1994). The Texas Court of Criminal Appeals has also recognized, "'Confidential information' is,
by definition, information that is available only to authorized persons; it is 'classified,' 'privileged,'
'private,' 'secret,' 'restricted.'" Landers v. State, 256 S.W.3d 295, 309 (Tex. Crim. App. 2008)
(quoting "Confidential," Roget's II: The New Thesaurus (3rd ed. 1995)). The plain meaning of this
phrase includes documents subject to the attorney-client or work-product privileges. Such
documents would also constitute information that is "excepted from required disclosure" or
"confidential under other law." See In re City of Georgetown, 53 S.W.3d at 332 (holding that rules
of civil procedure and evidence are "other law" for purposes of section 552.022 of public
information act).

 Adopted in 1973, the Texas Public Information Act is modeled on the federal
Freedom of Information Act. City of Fort Worth v. Cornyn, 86 S.W.3d 320, 323 (Tex. App.--Austin
2002, no pet.). The language in section 552.008(a), which states "This chapter does not grant
authority to withhold information from individual members, agencies, or committees of the
legislature to use for legislative purposes," is strikingly similar to section 552(d) of the FOIA,
formerly section 552(c), which states, "This section does not authorize withholding of information
or limit the availability of records to the public, except as specifically stated in this section. This
section is not authority to withhold information from Congress." See 5 U.S.C. § 552(d) (emphasis
added). The Texas Supreme Court has explained that, when the legislature adopts a federal statute,
Texas courts must presume that the legislature knew of the federal courts' construction of the federal
statute and intended to adopt that construction. City of Garland, 22 S.W.3d at 360 (citing Blackmon
v. Hansen, 169 S.W.2d 962, 964-65 (Tex. 1943)). We may therefore look to the federal courts'
construction of the FOIA for guidance in interpreting the Texas act. Id.

 When interpreting section 552(d), federal courts have consistently held that Congress
reserved unto itself a special right of access to governmental information. See, e.g., Murphy
v. Department of the Army, 613 F.2d 1151, 1157 (D.C. Cir. 1979). These same federal courts have
recognized that federal agencies may not use section 552(b)(5), or Exemption 5--including the
attorney-client, work-product, and deliberative-process privileges--to withhold information from
Congress, its committees, or its individual members, when requested in their official capacity for
legislative use. See id. As the court of appeals explained in Murphy, when enacting the FOIA,
Congress intended to maintain its ready access to information necessary for it to fulfill its legislative
function but not to override, directly or indirectly, all of the exemptions from general disclosure
written into the FOIA. See id. at 1156 n.12.

 Applying the federal courts' interpretation of the FOIA to the language of section
552.008, it is clear that the Texas Legislature, like Congress, intended to maintain for itself a special
right of access to confidential governmental information necessary to fulfill its legislative function
without overriding the exemptions to required disclosure written into the Texas act. See id.; see also
Terrell v. King, 14 S.W.2d 786, 790 (Tex. 1929) ("[C]onstitutional provisions which commit the
legislative function to the two houses are intended to include [the power to investigate] to the end
that the function may be effectively exercised."). Authority to pursue investigations and inquiries
has long been regarded as an incident of full legislative power. Terrell, 14 S.W.2d at 789-90. We
therefore conclude that the phrase "confidential information" in section 552.008 is sufficient to
include the documents at issue, and we reject the Commission's statutory construction argument.

 We turn to the Commission's separation of powers claim.


Separation of Powers

 The Commission argues that section 552.008 and, by extension, Senator Shapleigh's
requests violate the separation of powers because they invade the exclusive power of the
Commission to carry out its constitutionally delegated functions under article XVI, section 59 of the
Texas Constitution. Specifically, the Commission argues that section 552.008 causes a chilling
effect on the authority constitutionally committed to the Commission to regulate in the area of
natural resources. Thus, the Commission contends, section 552.008 and Senator Shapleigh's
requests unduly interfere with the Commission's authority as derived from the Texas Constitution.

 Article II, section 1 of the Texas Constitution, which governs separation of powers,
states:


 The powers of the Government of the State of Texas shall be divided into three
distinct departments, each of which shall be confided to a separate body of
magistracy, to wit: Those which are Legislative to one; those which are Executive to
another, and those which are Judicial to another; and no person, or collection of
persons, being of one of these departments, shall exercise any power properly
attached to either of the others, except in the instances herein expressly permitted.


Tex. Const. art. II, § 1. This provision confirms the prohibition against one branch of government
exercising a power inherently belonging to another branch. See General Servs. Comm'n v. Little-Tex
Insulation Co., 39 S.W.3d 591, 600 (Tex. 2001).

 Although the language of this provision "appears on its face to be rigid and absolute[,] 

. . . such a construction would be impossible to implement in all cases because not every
governmental power fits logically and clearly into any particular 'department.'" Holmes v. Morales,
906 S.W.2d 570, 573 (Tex. App.--Austin 1995), rev'd in part on other grounds, 924 S.W.2d 920
(Tex. 1996). When construing separation of powers under the federal Constitution, the United States
Supreme Court "ha[s] never held that the Constitution requires that the three branches of
Government 'operate with absolute independence,'" see Morrison v. Olson, 487 U.S. 654, 693-94
(1988) (quoting United States v. Nixon, 418 U.S. 683, 707 (1974)), choosing instead to adopt
"Madison's flexible approach to separation of powers," Mistretta v. United States, 488 U.S. 361, 380
(1989), and "uph[o]ld statutory provisions that to some degree commingle the functions of the
Branches, but that pose no danger of either aggrandizement or encroachment." Id. at 382. In the
words of Justice Jackson:


 While the Constitution diffuses power the better to secure liberty, it also
contemplates that practice will integrate the dispersed powers into a workable
government. It enjoins upon its branches separateness but interdependence,
autonomy but reciprocity.


Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635 (1952) (Jackson, J., concurring). Like their federal counterparts, Texas courts have long held that some degree of
interdependence and reciprocity is subsumed within the separation of powers principle. Id.; see
Government Servs. Ins. Underwriters v. Jones, 368 S.W.2d 560, 562 (Tex. 1963); State Bd. of Ins.
v. Betts, 308 S.W.2d 846, 852 (Tex. 1958); 1 George D. Braden et al., The Constitution of the State
of Texas: An Annotated and Comparative Analysis 98 (1977) ("The separation principle is not and
cannot be rigid."). Addressing the relationship between separateness and efficacy, the Texas
Supreme Court stated: 


 Co-ordination or co-operation of two or more branches or departments of government
in the solution of certain problems is both the usual and expected thing. . . . The
system of checks and balances running throughout the governmental structure[,]
while designed to prevent excesses, is not intended to make effective action
impossible.


Betts, 308 S.W.2d at 852.

 While some degree of interdependence and reciprocity is permissible, Texas courts
have consistently recognized that separation of powers may be violated in either of two ways:


 First, it is violated when one branch of government assumes, or is delegated, to
whatever degree, a power that is more "properly attached" to another branch. The
provision is also violated when one branch unduly interferes with another branch so
that the other branch cannot effectively exercise its constitutionally assigned powers.


Jones v. State, 803 S.W.2d 712, 715-16 (Tex. Crim. App. 1991) (quoting Armadillo Bail Bonds
v. State, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990)) (citations and emphases omitted). The
Commission does not allege that the legislature, by enacting section 552.008, or Senator Shapleigh,
by requesting information under the public information act, has assumed or exercised a power that
is more "properly attached" to the executive branch of government. Rather the Commission argues
that section 552.008 and the Senator's requests "unduly interfere" with the Commission's exercise
of its constitutionally assigned powers.

 To determine whether a separation of powers violation involving "undue interference"
has occurred, we engage in a two-part inquiry. See Armadillo Bail Bonds v. State, 802 S.W.2d 237,
239 (Tex. Crim. App. 1990). We look first to the scope of the Commission's constitutionally
assigned powers and, then, we consider the impact of the statute and the Senator's requests upon the
Commission's exercise of those powers. Id. (appellate inquiry begins with nature of constitutional
power and extent to which legislative encroachment is permitted). 


 Constitutional Powers Assigned to the Commission

 The Commission asserts that it derives constitutional authority from article XVI,
section 59, of the Texas Constitution. In relevant part, article XVI, section 59--also known as the
Conservation Amendment--provides:


 (a) The conservation and development of all of the natural resources of this
State, and development of parks and recreational facilities, including the
control, storing, preservation and distribution of its storm and flood waters,
the waters of its rivers and streams, for irrigation, power and all other useful
purposes, the reclamation and irrigation of its arid, semi-arid and other lands
needing irrigation, the reclamation and drainage of its overflowed lands, and
other lands needing drainage, the conservation and development of its forests,
water and hydro-electric power, the navigation of its inland and coastal
waters, and the preservation and conservation of all such natural resources of
the State are each and all hereby declared public rights and duties; and the
Legislature shall pass all such laws as may be appropriate thereto.


Tex. Const. art. XVI, § 59(a) (emphasis added). The plain language of this provision assigns the
power to enact laws relating to conservation and development of natural resources not to the
Commission, but to the legislature. Subsection (a) of this provision states " . . . and the Legislature
shall pass all such laws as may be appropriate thereto." Id. Subsection (b) authorizes the creation
of conservation and reclamation districts, and subsection (c) permits the legislature to authorize
indebtedness and the levy and collection of taxes within such districts provided, however, that such
proposition be first submitted to and adopted by qualified voters of a district. Id. § 59(b)-(c). 
Nowhere in this provision does the constitution mention the Commission or otherwise delegate
authority to the Commission. Id. § 59. Based on its plain language then, the Commission derives
no constitutionally assigned power from article XVI, section 59, of the Texas Constitution.

 To the extent the Commission claims to derive constitutional authority from
article IV, section 10, we likewise reject that contention. Article IV, section 10 states:


 [The Governor] shall cause the laws to be faithfully executed and shall conduct, in
person, or in such manner as shall be prescribed by law, all intercourse and business
of the State with other States and with the United States.


Tex. Const. art. IV, § 10. Like article XVI, section 59, article IV, section 10, makes no mention of
the Commission. See id. While the parties do not dispute that the Commission functions within the
realm of the executive branch, we cannot conclude that such functioning brings the Commission
within the scope of any constitutional authority granted by article IV, section 10. See Holmes,
906 S.W.2d at 572 (ascribing different meanings to the terms "judiciary" and "Judicial
Department"). The plain language of article IV, section 10, does not grant any constitutional
authority to the Commission.

 Our conclusions that the Commission does not derive constitutional authority from
either article XVI, section 59, or article IV, section 10, are further supported by the longstanding
recognition that agencies are creatures of statute and have no inherent authority. Public Util.
Comm'n v. GTE-Southwest, Inc., 901 S.W.2d 401, 406-07 (Tex. 1995). Although we recognize that
the legislature may create an administrative agency, like the Commission, and delegate its legislative
powers thereto, such powers are derived from statute, not the Texas Constitution. Id.; see also Texas
Boll Weevil Eradication Found., Inc. v. Lewellen, 952 S.W.2d 454, 467 (Tex. 1997); Railroad
Comm'n v. Lone Star Gas Co., 844 S.W.2d 679, 689 (Tex. 1992). More importantly, an agency may
exercise only those powers expressly delegated by statute and those powers necessarily implied to
carry out the specific powers delegated. Public Util. Comm'n, 901 S.W.2d at 406-07; McDaniel
v. Texas Natural Res. Conservation Comm'n, 982 S.W.2d 650, 651-52 (Tex. App.--Austin 1998,
pet. denied); Sexton v. Mount Olivet Cemetery Ass'n, 720 S.W.2d 129, 137-39 (Tex. App.--Austin
1986, writ ref'd n.r.e.).

 In support of its separation of powers argument, the Commission relies on an informal
letter ruling issued by the attorney general in response to a request for information by a Texas House
Representative. See Tex. Att'y Gen. OR2008-02184 (Feb. 15, 2008). The representative requested
public information from the attorney general himself pursuant to section 552.008. The attorney
general argued that specific documents responsive to the request were exempt from disclosure
because they were privileged attorney-client communications and disclosure would infringe upon
the attorney general's constitutional authority to render advisory opinions in violation of the
separation of powers doctrine. In his letter ruling, the attorney general explained that article IV,
section 22 of the Texas Constitution confers exclusive authority to issue advisory opinions on the
attorney general and no constitutional provision conferred such power on the legislature. See id.
at 2-3. The attorney general concluded that allowing legislative access to the attorney general's
internal deliberations would unduly interfere with the effective exercise of his constitutional power
to render a written advisory opinion. See id. at 3.

 The Commission's reliance on this letter ruling is misplaced. Unlike the attorney
general, the Commission derives no specific power from the Texas Constitution. In the absence of
constitutional authority assigned to the Commission, there can be no separation of powers violation
occasioned by the legislature's enactment of section 552.008 or the Senator's requests for
information under that statute. See Holmes, 906 S.W.2d at 574 ("It is quite evident that the office
of district attorney has by statutory delegation the duty and power to represent the state in criminal
cases in district court. We must find that delegation in the constitution, however, before a
separation-of-powers problem arises." (citation omitted)). Because we find no constitutional
authority committed to the Commission and, therefore, no separation of powers violation, we can
affirm the district court's judgment on this ground alone without considering the second prong of
the inquiry.


 Permissible Legislative Encroachment

 Nevertheless, even if we agreed with the Commission that it derives authority to issue
air quality permits from the Constitution, to reverse the district court's judgment we would still have
to find that the legislature's enactment of section 552.008 unduly interferes with the Commission's
exercise of constitutional authority.

 "The power and authority of a state legislature is plenary and its extent is limited only
by the express or implied restrictions thereon contained in or necessarily arising from the
Constitution itself." Government Servs. Ins. Underwriters, 368 S.W.2d at 563. When the legislature
enacts a statute, it exercises a power "properly attached" to the legislative branch of government. 
Jones, 803 S.W.2d at 716. A constitutional problem arises, however, when legislative enactment
interferes with the core functioning of another branch of government in a field constitutionally
committed to the control of that branch. Id.; see also Armadillo Bail Bonds, 802 S.W.2d at 239
(legislature may not interfere in core judicial functions). Stated differently, the legislature may not
interfere with the core functions of the judicial or executive branches without running afoul of
separation of powers.

 In support of its claim that section 552.008 unduly interferes with its permit granting
authority, the Commission argues that release of its confidential documents to Senator Shapleigh
would have a "chilling effect" on the free flow of ideas, frank communications, and the exchange
of advice from the Commission's attorneys and the Commission. (6) But, the Commission cites no
authority, and we have found none, for the proposition that some unspecified chilling effect alone
would constitute sufficient undue interference to create a separation of powers violation.

 We further observe that subsection 552.008(b) protects the confidentiality of the
Commission's documents once they are disclosed pursuant to a legislative request for information. 
See Tex. Gov't Code Ann. § 552.008(b). Subsection 552.008(b) preserves the confidentiality of the
Commission's documents while in the possession of Senator Shapleigh by authorizing the
Commission to require Senator Shapleigh to sign a confidentiality agreement prior to receiving the
documents at issue. See id. In addition, subsection 552.008(b) expressly states that disclosure to
Senator Shapleigh does not waive or otherwise affect the confidentiality of the documents for
purposes of state or federal law, nor does disclosure to Senator Shapleigh under section 552.008
prevent the Commission from asserting exceptions to required disclosure in response to future
requests for these documents. (7) See id. These protections make clear that the legislature intended to
give its members and committees a right of access even to confidential information. Accordingly,
even were we to accept the Commission's argument regarding its constitutional authority, we
conclude the Commission has failed to demonstrate how disclosure of the documents at issue to
Senator Shapleigh unduly interferes with the Commission's exercise of that authority. We overrule
the Commission's separation of powers claim.


CONCLUSION


 Because we conclude that section 552.008 requires disclosure of the documents at
issue and the Commission has failed to demonstrate that such disclosure would unduly interfere with
any constitutional authority committed to the Commission, we affirm the district court's judgment.




 __________________________________________

 Jan P. Patterson, Justice


Before Justices Patterson, Puryear and Henson

Affirmed

Filed: April 13, 2010
1. Senator Shapleigh's first request was a letter to the Commission dated February 14, 2008. 
His second request was a letter to the Commission dated February 18, 2008.
2. Senator Shapleigh withdrew as a party to the administrative proceedings after the
Commission refused to disclose certain documents in response to his requests.
3. Tex. Gov't Code Ann. § 552.008 (West 2004) (effective until September 1, 2010). The
legislature enacted various amendments to section 552.008 in 2009; however, these amendments do
not affect the outcome of this case. See Act of May 30, 2009, 81st Leg., R.S., ch. 1377, § 2, 2009
Tex. Gen. Laws 4326, 4326-27; Act of May 27, 2009, 81st Leg., R.S., ch. 1364, § 1, 2009 Tex. Gen.
Laws 4304, 4304-05. For convenience, we cite to the current statute.
4. The Commission's general counsel forwarded documents held by the general counsel's
office, and a lawyer in the Commission's Environmental Law Division forwarded documents held
by that division to the attorney general's office.
5. Because the attorney general did not seek summary judgment, our review is limited to
whether the district court properly granted summary judgment in favor of Senator Shapleigh. See
Ackermann v. Vordenbaum, 403 S.W.2d 362, 365 (Tex. 1966); see also Montgomery v. Blue Cross
& Blue Shield of Tex., Inc., 923 S.W.2d 147, 152 (Tex. App.--Austin 1996, writ denied) ("Before
an appellate court may reverse summary judgment for one party and render judgment for the other
party, all parties must have sought final judgment relief in their cross-motions for summary
judgment."). Therefore, we do not consider whether the district court erred in denying summary
judgment to the Commission. See Ackermann, 403 S.W.2d at 365.
6. In support of this argument, the Commission relies on conclusory affidavits from two of
the Commission's attorneys. In each affidavit, the affiant states a personal opinion that disclosure
would have a chilling effect on the attorney-client relationship or would inhibit the ability of agency
attorneys to provide legal advice. But neither affiant explains how disclosure of the subject
documents to a legislator would restrict the communication of legal advice between Commission
administrators and their counsel.
7. In response to two other requests for these same documents, we observe that the attorney
general agreed with the Commission that the documents at issue were exempt from disclosure under
section 552.107 of the public information act. See Tex. Att'y Gen. OR2008-10112 (July 25, 2008),
OR2008-06741 (May 16, 2008).